## Ex Parte FLORENCE CORNWALL.

### Division Two, November 23, 1909.

1. **PAROLE: Insufficient.** Where a defendant entered a plea of guilty to keeping a bawdy house and was sentenced to ninety days in jail, an order of the court granting her "a stay of execution upon condition that she remove from the place she now occupies, and does not return thereto, and that she does not again violate the law," is not a parole, but simply an ordinary stay of execution; and not being a parole, the court had no authority to revoke it.

2. ———: ———: **Execution.** The court had no power to grant the stay of execution, nevertheless a revocation thereof by the court under the impression that it was a parole, after she had partly performed the judgment and at a subsequent term, and the rearrest of the defendant, were illegal.

Ex parte Cornwall.

3. ———: ———: ———: Habeas Corpus: Changing Judgment. Where defendant had pleaded guilty to keeping a bawdyhouse, and been sentenced to jail for ninety days, and a stay of execution was entered upon condition, and upon information by the prosecuting attorney at a subsequent term that she had violated her parole, the stay was set aside, and execution ordered, and she applied for a writ of *habeas corpus* to the same court, the only question for consideration was the legality of the sheriff's custody, and the court had no authority to set aside the original judgment, and enter a fine of $200, and order her to jail until the fine was paid; and the original judgment being erroneous and the attempted parole invalid, she was entitled to her discharge.

4. JUDGMENT: Partly Complied With: New Judgment. The court has no power to set aside an erroneous judgment which has been partly complied with and substitute a new judgment in lieu thereof.

5. ———: Habeas Corpus: New Judgment. The court has no power, at a subsequent term, upon the application for a *habeas corpus*, to enter an entirely new judgment, on the ground that the original judgment, entered upon a plea of guilty and under which the petitioner is being held, was erroneous.

6. ———: ———: ———: Statutes. Sections 2720 and 3615, Revised Statutes 1899, providing that no prisoner shall be discharged on *habeas corpus* because the judgment "was erroneous as to time or place of imprisonment," have no application where the original judgment imposed a jail sentence and the court undertakes to render an entirely new judgment imposing a fine.

7. ———: ———: ———: Hearing and Presence. A substantial right of an accused, in answering to a criminal charge, is to be present, not only during the progress of the trial, but when punishment is imposed; and the courts cannot, upon an application for a writ of *habeas corpus*, for the first time assess punishment against the petitioner.

## Habeas Corpus.

RELATOR DISCHARGED.

*Sangree & Bohling* and *J. H. Bowron* for relator.

(1) The criminal court of Pettis county, under the statutes, could only impose a fine for the offense charged. The jail sentence was unauthorized. R. S.

1899, sec. 2197. Likewise, the stay of execution granted relator was unauthorized. A stay of execution may be granted for ninety days after conviction, by defendant entering into a recognizance to surrender himself in execution. R. S. 1899, sec. 2695. Or a stay of execution may be granted when an appeal is taken. R. S. 1899, secs. 2698 and 2699. Or when a writ of error is sued out. R. S. 1899, sec. 2700. The judgment and stay of execution, although erroneous, were complied with by relator for the ninety days, and longer, and she was entitled to her discharge. An erroneous sentence, after it has been partly executed, cannot be revised by the court, and a new sentence imposed, even at the same term of court. *Ex parte* Lange, 18 Wall. 163; *Ex parte* Johnson, 46 Fed. 477. (2) The condition of the stay of execution could not extend beyond, or be performed after, the expiration of the term for which the relator was sentenced. *Ex parte* Prout, 86 Pac. 275; Woodward v. Murdock, 124 Ind. 444. (3) After the November term of court, 1908, had elapsed, and the January and April terms, of 1909, intervened, the criminal court of Pettis county had no authority to set aside the stay of execution and order relator committed to jail under the judgment. Danforth v. Lowe, 53 Mo. 217; Warren v. Manwaring, 173 Mo. 37; State v. Riley, 219 Mo. 667. (4) There is nothing in the return that shows that relator had violated the conditions of the stay of execution, and it should not have been set aside. (5) Relator was entitled to a hearing on the question, whether she had violated the conditions of the stay of execution. State ex rel. O'Connor v. Wolfer, 53 Minn. 135, and cases there cited. The information the prosecuting attorney furnished the court that the relator had violated the stay of execution, was of no more force and effect than if the information had been furnished by any private individual. Nor does the court find that the relator had violated the conditions of the stay, but sets

the stay aside on such information, regardless whether true or false. The information the prosecuting attorney furnished the court, was that relator, "is violating the terms of her parole, by keeping a disorderly house." The court then ordered the parole set aside. She never had been paroled, she was granted a stay of execution. The words, "parole" and "stay of execution," have well defined meanings in our criminal law, and this court, when a person's liberty is involved, will not say, when a court of record which speaks by and through its records, used the words, "stay of execution," meant "parole," and when the word "parole," is used, that it meant "stay of execution." The parole law is unconstitutional, being in conflict with section 8, article 5, of the Constitution of Missouri. The Governor alone has power to grant reprieves, commutations and pardons. Constitution of Missouri, art. 5, sec. 8; Constitutional Discharge of Convicts, 73 Vt. 414; *Ex parte* Parker, 106 Mo. 551; State v. Sloss, 25 Mo. 291; People v. Cummings, 88 Mich. 249. (6) The relator pleaded guilty with the understanding that she was to receive ninety days' jail sentence. The court had no authority to set aside the jail sentence and impose a fine in lieu thereof. She refused to plead guilty and accept a fine, for the reason that such fine would be a lien on her real estate. State v. Stephens, 71 Mo. 535; State v. Kring, 71 Mo. 551. (7) A sentence that exceeds in its extent the punishment prescribed by law for the offense in question, is absolutely void and the prisoner is entitled to be discharged on *habeas corpus*. *Ex parte* Page, 49 Mo. 291; *Ex parte* Cox, 32 Pac. 197; Miller v. Snyder, 6 Ind. 1; People v. Litscomb, 50 N. Y. 559; State v. Norwood, 95 N. C. 578; Hanney v. State, 5 Wis. 521.

*Harvey D. Dow* for respondents.

The plea of guilty was voluntary, and properly received by the court. The statute under which petitioner was convicted, Sec. 2197, R. S. 1899, provides a fine not less than $200 nor exceeding $1,000. A jail sentence of 90 days is not responsive to the statute under which plea of guilty was entered, and therefore the prisoner was sentenced to punishment not allowed by law. Secs. 2197, 2649 and 2651, R. S. 1899; *In re* Bowman, 7 Mo. App. 569; State v. Ammons, 220 Mo. 6. The office of the writ of *habeas corpus* first sued out in the circuit court of Pettis county, has been so far changed into a writ of error as to require the court hearing the *habeas corpus* to resentence the prisoner in conformity with the law, where the prisoner has been sentenced to a punishment not allowed by law, or in excess of that allowed by law. Sec. 2720, R. S. 1899; Babb v. Brueve, 23 Mo. App. 604; *Ex parte* Kenney, 105 Mo. 535; *Ex parte* Gray, 77 Mo. 160; *Ex parte* Cohen, 159 Mo. 662; State v. Nunley, 185 Mo. 102. Where there is an erroneous judgment and sentence, the court will enter proper judgment and sentence. *Ex parte* Kenney, 105 Mo. 535; Babb v. Brueve, 23 Mo. App. 604; State v. Musiman, 112 Mo. App. 540; Carter v. Epasitine Co., 124 Mo. App. 530; State v. Biesemeyer, 136 Mo. App. 668. Where the judgment and sentence is one not allowed by law, and not prescribed in the statute for the court to make, the same may be set aside and the proper judgment entered, upon an application for discharge of prisoner by writ of *habeas corpus*. Sec. 2720, R. S. 1899; Babb v. Brueve, 23 Mo. App. 604; *Ex parte* Page, 49 Mo. 291; Coal Co. v. Lead & Zinc Co., 123 Mo. App. 249; Fisher v. Fisher, 114 Mo. App. 627; 1 Black on Judgments, sec. 307. The commitment under which the defendant was held at the time of the issuance of the original writ herein was regular and according to law. Secs. 2661 and 2684, R. S. 1899. The stay of execution shown

by the record is not authorized by any statute. Such stays apply to cases specially mentioned in particular statutes, and this is not the class of cases mentioned. Secs. 2665, 2666, 2669 and 2672, R. S. 1899; State v. Hockett, 129 Mo. App. 639.

FOX, J.—This is an original proceeding pending in this court. On the 25th day of August, 1909, relator presented her petition to the Honorable Henry Lamm, one of the judges of the Supreme Court of this State, in chambers at Sedalia, Pettis county, Missouri, praying for the issuance of a writ of *habeas corpus*. The writ was issued and the prisoner brought before the judge forthwith, in accordance with the commands of the writ. Subsequently it was ordered that the return to this writ be set over until the October term, 1909, of the Supreme Court of Missouri, it being agreed that the petitioner should be released on bond. The bond was presented, approved and the prisoner released. Upon the meeting of Court In Banc at the October term, 1909, this proceeding was assigned to Division No. 2. The return was duly made by the sheriff and jailer of Pettis county, Missouri. Upon the return as made, the relator moved the court to discharge her from imprisonment, for the reason that no legal cause is shown for her imprisonment and restraint by the return made by the respondents to the writ of *habeas corpus* issued herein.

We deem it unnecessary to burden the statement and opinion with a reproduction of the petition or the return of the sheriff and jailer of Pettis county to the writ issued upon the petition. There is no dispute about the facts, and a statement of them will fully disclose the controverted questions involved in the record before us.

At the November term, 1908, of the criminal court of Pettis county, Missouri, the petitioner was indicted by the grand jury for keeping a bawdy house. She

employed counsel, Messrs. C. C. Kelly and E. C. White. It was first agreed between her counsel and the prosecuting attorney that petitioner should plead guilty to the charge and a fine should be imposed upon her for $250; then a stay of execution should be granted her on condition that she should leave her home and should not return thereto, and that she should not again violate the law. The question was then raised that this fine would be a lien on her real property and she refused to plead guilty under the arrangement. It was then agreed between her counsel and the prosecuting attorney that she should enter a plea of guilty to the indictment and a jail sentence should be imposed upon her of ninety days and a stay of execution granted on condition that she should leave her home and not again violate the law, which was concurred in by the court. With this understanding she entered a plea of guilty on the first day of December, 1908, in the criminal court of Pettis county, Missouri—the same being the November term, 1908, of said court. The judge of said court, in pursuance of said understanding had between her counsel and the prosecuting attorney, imposed a jail sentence of ninety days upon her, but granted her a stay of execution on condition that she remove from the place she then occupied and did not return thereto and that she did not again violate the law. The petitioner then paid all the costs of the suit, abandoned her then home and did not return thereto until after the writ herein was granted. At the January and April terms of the criminal court of Pettis county, 1909, no steps were taken by the court in the cause. At the June term, 1909, of said court to wit, on the 10th day of July, 1909, the court, on the suggestion of the prosecuting attorney, made an entry of record in which it was recited that the petitioner had violated the terms of her parole by keeping a disorderly house. The court thereupon as the record recites, revoked her parole and ordered an execution is-

sued. On the 20th day of August, 1909, petitioner was arrested and committed to the Pettis county jail. On the same day she sued out a writ of *habeas corpus* before the Hon. Louis Hoffman, judge of the criminal court of Pettis county, returnable August 23, 1909. Upon the hearing on said writ, said court set aside the jail sentence imposed upon the petitioner upon the first day of December, 1908, and assessed against her a fine of $200 in lieu thereof, and ordered her in the custody of the jailer of said county until said fine was paid. She refused to pay said fine and was thereupon committed to jail. On the same day, she again presented her petition to the Hon. Louis Hoffman, judge of the circuit and criminal court of Pettis county, Missouri, for her release from jail. Her petition was denied, whereupon she applied by a similar writ to the Hon. Henry Lamm, judge of this court, where her petition was granted and writ issued and made returnable on the first day of the October term, 1909, of this court.

Among the exhibits filed with the petition we find Exhibit A, which discloses the rendition of the original judgment against the petitioner by the circuit court of Pettis county. This exhibit is as follows:

"Be it remembered that on the 1st day of December, 1908, the same being the 21st day of the regular term of the Pettis County Circuit Court, A. D. 1908, the following among other proceedings of the same day were had, made and entered of record, to-wit:

## "KEEPING A BAWDY HOUSE.

"State of Missouri, Plaintiff, vs. Florence Cornwall, Defendant. No. 10744.

"Now at this day comes the prosecuting attorney, on the part of the State, and also comes the defendant in person, attended by her counsel, and the said de-

fendant withdraws her plea of not guilty heretofore entered herein, and enters a plea of guilty to the crime of keeping a bawdy house charged in the indictment herein; and the court fixes her punishment for said offense at imprisonment in the county jail for ninety days.

"It is therefore sentenced, ordered and adjudged by the court that said defendant be remanded to the custody of the sheriff of this county, and by him be imprisoned in the county jail for a period of ninety days, and that the State have and recover of said. defendant the costs of this prosecution, and that execution issue accordingly. And now the court grants the defendant a stay of execution upon condition that she remove from the place she now occupies, and does not return thereto, and that she does not again violate the law."

Exhibit B discloses the order revoking what the prosecuting attorney and the court construed to be a parole to the petitioner. This exhibit is as follows:

"Be it remembered that on the 10th day of July, 1909, the same being the 15th day of the regular June term of the Pettis County Circuit Court, A. D. 1909, the following, among other proceedings of the same day were had, made and entered of record, to-wit:

"KEEPING A BAWDY HOUSE.

"State of Missouri, Plaintiff, vs. Florence Cornwall, Defendant. No. 10744.

"Now at this day comes the prosecuting attorney, on the part of the State, and informs the court that the defendant, Florence Cornwall, is violating the terms of her parole by keeping a disorderly house, whereupon the court revokes her parole, and orders execution issued."

Exhibit C discloses the action of the circuit court of Pettis county at the special August term, 1909, in the matter of the application of Florence Cornwall for a writ of *habeas corpus*. This exhibit is as follows:

"Be it remembered that on the 23rd day of August, 1909, the same being the 1st day of the special August term of the Pettis County Circuit Court, A. D. 1909, the following, among other proceedings of the same day were had, made and entered of record, to-wit:

"IN THE MATTER OF APPLICATION OF FLORENCE CORNWALL FOR WRIT OF HABEAS CORPUS.

"9833.

"Now this day this cause coming on to be heard and the court having seen the pleadings and heard the evidence doth find that the defendant on December 1st, 1908, entered a plea of guilty to this court upon a proper indictment preferred by the grand jurors of Pettis county, against this defendant, for keeping a bawdy house, and by agreement of the prosecuting attorney of Pettis county, and attorneys for the defendant in lieu of a fine, this court then and there sentenced defendant to imprisonment in the county jail for ninety days.

"It is ordered that said judgment so far as it relates to the punishment at jail imprisonment, be set aside, and that the defendant pay a fine on her said plea of guilty, of two hundred dollars.

"It is therefore ordered and adjudged by the court that the State of Missouri, to the use of the school fund of Pettis county, have and recover of the defendant, the sum of two hundred dollars, and that she be remanded to the care and custody of the jailer of Pettis county until said fine of two hundred dollars be paid, or until she is otherwise discharged accord-

ing to law, also that the defendant pay the costs of this proceeding.''

The return of the sheriff and jailer shows that their custody and detention of the petitioner is predicated upon the last recited judgment of the court, marked Exhibit C.

This sufficiently indicates the nature and character of this proceeding to enable us to determine the legal propositions disclosed by the record.

### OPINION.

The record, as heretofore indicated, which is now before us, presents but one general legal proposition, that is, as to whether or not the sheriff and jailer have the legal custody of the petitioner by reason of the judgments of the circuit court of Pettis county, as heretofore indicated, and disclosed by the record before us.

After a most careful consideration of the proposition with which we are confronted respecting the restraint of the petitioner, we are clearly of the opinion that upon the disclosures of the record the petitioner is being held illegally, without any authority of law and is entitled to be relieved from such restraint and to a full discharge from the custody of the sheriff and jailer.

While it is true that the original judgment as rendered in this cause, fixing a jail sentence to be served by the petitioner, was erroneous and in fact void, and that the stay of execution as recited in such judgment was equally without force or vitality, yet it must not be overlooked that the petitioner at least partly complied with the conditions upon which the court predicated its stay of the execution of that judgment. It will be noted that the judgment recites that the defendant should be imprisoned in the county jail for a period of ninety days, and that the State have and recover of the defendant the costs of this prose-

cution and that execution issue accordingly. Then follows the granting of the stay of execution upon condition that the petitioner remove from the place she then occupied, not to return thereto, and did not again violate the law.

The record in this cause discloses that the petitioner partly complied with the requirements of that judgment. She paid the costs of the criminal prosecution, abandoned her home as was required under the conditions of the stay of execution and did not return until after the writ herein was granted.

The prosecuting attorney and the order of the circuit court made at the June term, 1909, of the Pettis County Circuit Court seem to have recognized that a parole had been granted the petitioner in the original judgment of the November term, 1908. Manifestly this is a misconception of the provisions of what is commonly known as the parole law of this State. There was no parole granted this petitioner in that judgment. There is an entire absence of any reference to any of the requirements embraced in the provisions of the parole law. There was no requirement on the part of the petitioner to appear before the court at any subsequent term with witnesses to make proof of her conduct, and if the recitations in the judgment at the November term, 1908, are to be construed as a parole, then we confess it would be a parole without the recitation of a single essential requirement under the law regulating the granting of paroles. We are clearly of the opinion that there was no parole in this case, and that the court in its judgment at the November term, 1908, simply sought to grant an ordinary stay of execution, and while it had no power to grant the stay, yet by reason of such want of power it would not authorize the treatment of the recitals concerning such stay of execution as an ordinary parole under the provisions of the parole law of this State. It follows from this that the order of the court made at the June term,

1909, revoking the parole of the petitioner upon infor-
mation communicated to the court by the prosecuting
attorney, was without any authority of law.  As here-
tofore stated, there was no parole to revoke; how-
ever, it is disclosed by the record that upon this pre-
tended revocation there was an execution issued and
the petitioner was taken into custody by the sheriff.
Manifestly, the matter for the consideration before the
court at its special term in August, 1909, upon the
*habeas corpus* proceeding, was the legality or illegality
of the custody of the sheriff by reason of the arrest
made by the sheriff upon the revocation of what the
court denominated a parole.  In that proceeding, in
our opinion, it is clear that the petitioner was entitled
to her discharge from the custody of the sheriff; how-
ever, the circuit court of Pettis county, at its special
term in August, 1909, in the consideration of the ap-
plication of the petitioner for a writ of *habeas corpus,*
sought to annul, and did in fact embrace in an order
as set out in Exhibit C a setting aside, the judgment
of the circuit court rendered at its November term,
1908, sentencing the prisoner to imprisonment in the
county jail for ninety days, and substituted in lieu
thereof the imposition of a fine for $200, followed by
the usual recitation in the judgment for its recovery.

It will be noted that the judgment of the circuit
court of Pettis county at its special August term, 1909,
rendered while considering an application for a writ
of *habeas corpus,* sought to annul and set aside a judg-
ment in a proceeding which had been rendered eight
or nine months previous to the action of the court at
its August term, 1909.  It is upon the judgment as
rendered at the special term in August while the court
had under consideration the application of the peti-
tioner for a writ of *habeas corpus,* that the sheriff and
jailer in their return predicate their right to retain
the custody of the petitioner.  We are unwilling to

give our assent to or concur with the claim of this right by the respondents, the sheriff and jailer.

The judgment of the special August term, 1909, upon which the sheriff and jailer predicate the legality of the custody of the petitioner, cannot be maintained for two reasons:

First: Even if it be conceded that the judgment rendered at the November term, 1908, was erroneous, yet such judgment and the conditions imposed by it having been partly complied with, the circuit court had no power at a subsequent term to revise it and substitute therefor an entirely new judgment.

Second: The court had no power upon the hearing of an application under the *Habeas Corpus* Act to enter an entirely new judgment as was done in this case.

Upon the first proposition the general rule is well stated in 12 Cyc. Law and Proc., p. 784. It is there stated that "after the term is passed at which the original sentence was imposed, the court has as a general rule no power to modify, amend, or revise it, particularly if the new punishment is in excess of the original sentence. Changes in the sentence, however, which do not alter the punishment but only change the time or place of its infliction may be made at a subsequent term."

It was expressly ruled in *Ex parte* Lange, 18 Wall. 163, that where a court imposed both a fine and imprisonment it was erroneous for the reason that the statute only conferred power to punish by fine or imprisonment, and a part of such judgment, that is, the payment of the fine, having been complied with, such court has no power even during the same term to modify the judgment by imposing imprisonment instead of the former sentence.

In the 46th Fed. 477, the district attorney suggested during the consideration of the case that should the court come to the conclusion that the sentence was

erroneous, the prisoner might be held for a new sentence in the district court. The court responded to such suggestion by saying: "But it was decided by the Supreme Court in *Ex parte* Lange, 18 Wall. 163, that an erroneous sentence, after it has been partly executed, cannot be revised by the court and a new sentence imposed, even at the same term of the court."

In this case the circuit court of Pettis county, in its judgment at the November term, 1908, embraced a recovery of the costs of the prosecution, and this much of the judgment, about which there is no dispute, was fully satisfied. But in addition to this the court sought to stay the execution of the other part of the judgment, that is, the imprisonment in the county jail, and imposed certain conditions, which the record in this cause also discloses were partly complied with.

Upon the second proposition, in our opinion the court was absolutely without any power to enter the new judgment imposing a fine at its special term in August, 1909. This judgment, as disclosed by the record, was rendered upon the consideration of a proceeding under the *Habeas Corpus* Act instituted by the petitioner. Learned counsel for the sheriff and jailer predicate the legality and sufficiency of such judgment upon the provisions of section 2720, Revised Statutes 1899. This section provides that "no person shall be discharged under the provisions of the *Habeas Corpus* Act, nor shall any judgment be reversed or set aside by the Supreme Court, for the reason that the judgment by virtue of which such person is confined, or from which he has prosecuted an appeal or writ of error, was erroneous as to time or place of imprisonment, but in such case it shall be the duty of the court or officer hearing the case to sentence such person to the proper place of confinement, and for the correct length of time, from and after the date of the original sentence, and to cause the officer or other person hav-

223 Sup—18

ing such prisoner in charge to convey him forthwith to such designated place of imprisonment.''

Section 3615, Revised Statutes 1899, also provides that ''no person shall be entitled to the benefit of the provisions of this chapter (that is the chapter applicable to the writ of *habeas corpus*) for the reason that the judgment by virtue of which such person is confined, was erroneous as to time or place of imprisonment; but in such cases it shall be the duty of the court or officer before whom such relief is sought to sentence such person to the proper place of confinement and for the correct length of time from and after the date of the original sentence, and to cause the officer or other person having such prisoner in charge to convey him forthwith to such designated place of imprisonment.''

Manifestly these two sections have no application to the case at bar as disclosed by the record before us, and fail to render any aid or support to the maintenance of the contention that the judgment as disclosed in Exhibit C, rendered at the special August term, 1909, is a valid judgment. It is apparent that these sections have application alone where a judgment of the circuit court is erroneous as to time or place of imprisonment. In other words, if the court should render a judgment sentencing a defendant to the penitentiary, when in fact upon the record he ought to be sent to the Reform School, this statute would be applicable, because it is an error concerning the place of confinement; or if the court should sentence a defendant to the penitentiary for a length of time in excess of that authorized by law, that would also be an error concerning the length of time of the imprisonment, and petitioners seeking relief by the writ of *habeas corpus* would very properly and justly be confronted with the provisions of the sections of the statute to which reference has been made, and the court before whom such proceeding was pending would sim-

ply in obedience to the provisions of those sections fix the proper time and place of imprisonment, and order the officer to execute its judgment. But that is not this case. The circuit court of Pettis county in its judgment at the August term, 1909, while considering a proceeding under the *Habeas Corpus* Act, did not undertake to correct an error in a judgment which was erroneous simply as to time or place, but it entered an entirely new judgment which absolutely had no reference to imprisonment, nor to the correction of an erroneous judgment as to the time and place of such imprisonment. The judgment was entirely a new and different one, and sought to impose a punishment to which no reference had ever been made in the original judgment in this cause.

In the administration of the criminal laws of this State it is fundamental that one of the substantial rights of a defendant in answering to a criminal charge, is to be present, not only during the progress of the trial, but at the time of the imposition of the punishment. This is a right which the petitioner in this cause had the right to demand in the proceeding in the circuit court where the criminal charge was being considered, and in our opinion the law does not contemplate that the courts of this country may, upon the hearing of an application for a writ of *habeas corpus,* for the first time assess punishment against the defendant. That was a matter within the province of the jurisdiction of the court which heard and disposed of the criminal charge. While the courts have ample power to correct errors respecting erroneous judgments as to time and place of imprisonment, as provided by the sections of the statute as heretofore indicated, yet we are unwilling to go to the extent of saying that for the first time in a proceeding under the *Habeas Corpus* Act the court may then assess the punishment that was never contemplated by the original judgment or to which no reference was made by such judgment.

Learned counsel for the sheriff and jailer, the respondents in this proceeding, asserts that where there is an erroneous judgment and sentence the court will, upon the consideration of a proceeding under the *Habeas Corpus* Act, enter a proper judgment and sentence. In support of that contention counsel directs our attention to numerous cases. We shall not undertake to review the cases to which reference is made, but deem it sufficient to say that we have carefully examined all the cases cited in the brief, and in our opinion they absolutely fail to support such contention. The cases of *Ex parte* Kenney, 105 Mo. 535; *Ex parte* Gray, 77 Mo. 160, *Ex parte* Cohen, 159 Mo. 662, and State v. Nunley, 185 Mo. 102, in no way conflict with the conclusions as herein indicated upon the proposition under consideration. All of those cases simply recognize the provisions of sections 2720 and 3615 as to the correction of erroneous judgments as to time and place of imprisonment, but none of them deal with the proposition which is now under consideration, and in no way support the contention that the court for the first time in the hearing of an application under the *Habeas Corpus* Act may impose a punishment and enter an entirely new and different judgment which has no reference whatever to time or place of imprisonment.

The record in this cause discloses that there was no contemplation by counsel representing the State or the defendant in the original proceeding, where the criminal charge was being considered, of entering a judgment imposing as a penalty a fine; in fact it is emphasized by the disclosures of the record that counsel, both for the State and the defendant in that proceeding, were willing that the imposition of a fine should be avoided. Upon this state of the record we are unwilling to hold that a judgment is valid, rendered in a *habeas corpus* proceeding, without an opportunity of the petitioner to be heard upon the ques-

tion of punishment in the proceeding where the court had jurisdiction and was authorized to try and dispose of the criminal charge against the petitioner. The rendition of the judgment in this cause in a *habeas corpus* proceeding, which for the first time assessed the punishment against the petitioner, in our opinion would be depriving the petitioner of one of her substantial rights, that is, to be heard in the court that had jurisdiction of and authority to dispose of the original charge against her.

We have indicated our views upon the propositions disclosed by this record. In our opinion the relator is entitled to her discharge, and it is so ordered.

All concur.