State *ex rel.* Elmo Williams *v.* Hon. W. A. Riffe, *Judge, etc.*

(No. 9718)

Submitted April 17, 1945. Decided May 8, 1945.

*John Q. Hutchinson,* for petitioner.

*Ira J. Partlow,* Attorney General, and *Ralph M. Hiner,* Assistant Attorney General, for respondent.

KENNA, JUDGE:

A rule in prohibition was granted by this Court upon the petition of Elmo Williams against the Honorable W. A. Riffe, Judge of the Criminal Court of Raleigh County, upon a petition alleging that at the January, 1945, term of that court petitioner had been indicted for the first degree murder of his wife, arrested and placed in jail awaiting trial, which shortly thereafter was set for January twenty-fifth; that on January eighteenth, during the same term at which the indictment against him was returned, he was brought before the Criminal Court of Raleigh County and advised by his attorney that it had been agreed between him and the Prosecuting Attorney that in the event the accused would plead guilty to murder in the second degree the charge of first degree murder would be dismissed; and that upon the petitioner agreeing, with the approval of the trial judge, petitioner did enter his plea of guilty to murder in the second degree, upon which he was sentenced to not less than five nor more than eighteen years in the state penitentiary, the maximum sentence, and, in addition, to an additional five years because of a previous conviction.

The petition alleges that immediately after sentence was imposed petitioner was returned to the county jail of Raleigh County, where he has since remained pursuant to the judgment so entered.

The petition alleges further that the father-in-law of petitioner, the father of his deceased wife, about the first of February, 1945, filed with the Criminal Court of Raleigh County a petition in writing, signed by himself and many other persons, asking that the case against petitioner be tried and protesting the fact that petitioner was allowed to plead guilty to an offense less than murder in the first degree; that petitioner's attorney opposed the consideration of the petition by the Criminal Court of Raleigh County and filed with said court his own affidavit and that of several other persons in opposition to the affidavits that had been tendered and filed in support of the petition praying to set aside the judgment.

The petition seeking a peremptory writ of prohibition alleges that on February twentieth the Criminal Court of Raleigh County, in the absence of the accused, and after he had begun serving his sentence, entered an order the terms of which vacate, set aside and annul the judgment of that court rendered on the sixteenth day of January, 1945, and set the case against petitioner for trial at the March, 1945, term of court. The prayer of the petition is that the judge of the Criminal Court of Raleigh County be prohibited from ordering the trial of petitioner on said charge of murder in the first degree and from taking any action to force Williams to trial on that charge. Upon that prayer this Court granted the rule returnable April third, 1945.

In response to the rule the Honorable W. A. Riffe filed a verified answer in which it is stated that at the time of permitting Elmo Williams to plead guilty of murder in the second degree he was then of the opinion "that such arrangement was satisfactory to all parties interested in the case"; that thereafter certain petitions in protest of the sentence imposed on the sixteenth day of January, 1945, caused the court to entertain grave doubt as to the

correctness of that course of conduct, and that his order of February twentieth, 1945, vacating, setting aside and annulling the judgment entered on the sixteenth day of January, 1945, was based upon the following reasons:

a. Because he was and is of the opinion that the court had control of its orders during the term at which they are entered.

b. That the question of Williams' insanity was and is a question for a jury.

c. No jury having been impaneled or sworn, the accused had not been placed in jeopardy and that no right of his would be violated by his being required to answer the charge in the indictment against him.

d. That if the accused was insane the former sentence of the court was without doubt improper.

The order entered on the twentieth day of February, 1945, after reciting that: "This cause came on to be heard" upon the petition and affidavits filed in support thereof, the affidavits filed in opposition to the petition, and the "demurrer" and the fact that it was overruled, concludes as follows: "It is therefore considered and ordered that the judgment of this court rendered in this case on the 16th day of January, 1945, be and the same is hereby vacated, set aside and annulled, it is further ordered that said case be reinstated upon the docket of this court to be set for trial at the March, 1945 term of this court. To which action and ruling of the court, the defendant, by counsel, objected and excepted."

We believe that it was the plain purpose of this order to set aside entirely the order of January sixteenth, including the arraignment of Williams and his plea of guilty to murder in the second degree, to the extent that it lay within the power of the court at that time to do so, although its language, if strictly construed, might apply only to the imposition of sentence upon the accused.

Before discussing the legal questions involved we wish to emphasize the fact that this is a proceeding in prohibi-

tion that brings before this Court only the question of whether the Criminal Court of Raleigh County, on February twentieth, 1945, had jurisdiction, either entirely or partially, of an indictment for first degree murder against Williams, to which he had previously pleaded guilty to murder in the second degree and been sentenced therefor. The question of the degree of Williams' guilt, the manner in which that question was presented to the trial court, his mental condition on January sixteenth, and the question of whether it is proper for a criminal judge, after he has more or less deliberately adjudicated the imposition of a sentence, to permit a criminal case to be reopened at a later date of the same term because of a number of *ex parte* petitions, we do not feel called upon to consider.

It is rudimentary to state that the law recognizes only the interest of a citizen in felony prosecutions as a part of a body politic, and not as an individual. Law enforcement in the name of the State is primarily for the safety and well-being of the people as a whole and the punishment of the individual offender is for the purpose of deterring others from committing like offenses.

In this State in homicide cases where the killing by the accused is established there is a rebuttable presumption of murder in the second degree and if the State desires to raise the offense to murder in the first degree the burden rests upon it to do so by proof; if the accused wishes to reduce the punishment he can do so by showing that he is guilty of an offense less than murder in the second degree. Murder in the first degree is punishable by death unless the verdict is accompanied by a finding that the accused shall be confined in the penitentiary. Upon a plea of guilty the court is empowered to sentence to death or life imprisonment.

Approaching the legal questions involved, we believe it is well to note first that although in civil matters a trial court has well-nigh absolute control over its order book during the term except to the extent that that control is modified by statute, that rule of practice in criminal matters is subject to modification in order to comply fully

with the double jeopardy provision of our State and Federal Constitutions.

There seems to be no doubt that under the weight of authority, a criminal, as well as a civil, court may, for certain purposes, set aside a judgment by an order entered during the same term at which the order set aside was spread upon the records of the court. That rule, however, in criminal cases where the judgment has been satisfied in whole or in part, is limited to those cases in which the trial court reduces the penalty imposed. Cases in which the penalty is increased are treated as subjecting the accused to double jeopardy and therefore the second sentence is void, leaving in effect the original sentence. *United States* v. *Benz*, 282 U. S. 304, 75 Law Ed. 354, 51 S. Ct. 113; *Hickman* v. *Fenton*, 120 Neb. 66, 231 N. W. 510, 70 A. L. R. 819; 15 Am. Jur. 128 et seq.

In such a case, the former jeopardy, having occurred in the same proceeding, need not be shown by a special plea, but can be taken advantage of in any way that will direct the court's attention thereto. *State* v. *Cross,* 44 W. Va. 315, 29 S. E. 527.

The rule seems to be thoroughly established that where imprisonment has begun in satisfaction of a sentence, that sentence cannot be increased.

It will be seen that we are not here confronted with the question of an increase nor a decrease of sentence for the same offense, allowing a plea of guilty to murder in the second degree to stand. Williams received the maximum sentence for that offense. That sentence was set aside, as was his plea of guilty, by the terms of the court's order of January sixteenth. If it were simply a question of setting aside the sentence and resentencing the accused on the same charge or the same plea, undoubtedly the majority of the cases holding that that may be done when the result is a reduction in the sentence would be highly persuasive. But here the terms of the court's order are to set aside the sentence, the plea, and the dismissal, and to reinstate the indictment for murder in the first degree. It would seem apparent that the only purpose for pro-

ceeding in that way would be to try the defendant for murder in the first degree and that, if so, a plea of former jeopardy would unquestionably lie, but under the *Cross* case would not be necessary. If that is not the purpose of the trial court, or, perhaps, more properly, the State represented by the prosecuting attorney, it is rather difficult to perceive how the accused may be prejudiced. At any rate, the question of jurisdiction then would be determined by the court's final order and would, under the weight of authority, rest upon whether its effect was to increase or diminish the accused's sentence, the trial court having jurisdiction to decrease but none to increase after setting aside a sentence otherwise final and binding. Under the circumstances we do not believe that we can now hold that the Criminal Court of Raleigh County entirely lacked jurisdiction to enter its order of February twentieth, 1945, the final effect of which has not yet been determined, the proceeding now being in an interlocutory state.

We, therefore, are of the opinion to deny the issuance of the peremptory writ and to dismiss the petition of Elmo Williams without prejudice to his right to present the same contention hereafter in any manner he may be advised.

*Writ refused.*